IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. 3:10-250 ) ) JUDGE KIM R. GIBSON |
| v. | ) ) |
| GRANE HEALTHCARE CO. and EBENSBURG CARE CENTER, LLC, d/b/a CAMBRIA CARE CENTER, | ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

**I.    Introduction**

Before the Court is a motion for partial reconsideration (ECF No. 147), wherein the Defendants seek reconsideration of the Court's earlier decision denying their motion for summary judgment and granted partial summary judgment in favor of the Plaintiff. For the reasons that follow, the motion will be denied.

**II.    Background**

The Equal Employment Opportunity Commission ("EEOC") commenced this action against Grane Healthcare Company ("Grane") and the Ebensburg Care Center, LLC ("ECC"), on September 30, 2010, seeking to redress violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, committed in connection with the staffing of the Cambria Care Center ("CCC"). While the Defendants acknowledge that they had subjected prospective employees of the CCC to pre-offer medical examinations

and inquiries in violation of Title I of the ADA, they moved for summary judgment on the ground that none of the prospective employees had suffered injuries that could be redressed in this action. (ECF Nos. 92–93). In a motion for partial summary judgment, the EEOC sought an order enjoining the Defendants from subjecting job applicants to pre-employment medical examinations and medical inquires. (ECF Nos. 95–96). In a decision dated March 6, 2014, the Court denied the Defendants' motion for summary judgment and granted the EEOC's motion for partial summary judgment with respect to its claims against Grane. *EEOC v. Grane Healthcare Co.*, Civil No. 3:10-250, 2014 WL 896820, at *28 (W.D. Pa. Mar. 6, 2014). Grane was permanently enjoined from conducting medical examinations and inquires before extending job offers to its applicants. *Id.* The EEOC's motion was denied with respect to the ECC, which operates under the fictitious name of the CCC, because that entity's coverage under Title I remains in dispute.

Unlike a private plaintiff, the EEOC "may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23." *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333–34 (1980). Here, the EEOC seeks relief for more than 300 job applicants who underwent medical examinations and responded to medical inquiries in connection with the CCC's hiring process. (ECF No. 95-1 at 1–8). The class includes both successful and unsuccessful job applicants. The instant motion for partial reconsideration concerns only the claims asserted on behalf of those job applicants who were ultimately hired.

**III.    Legal Standard**

The Court's authority to reconsider its earlier ruling is governed by Federal Rule of Civil Procedure 54(b), which provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims . . .

Fed. R. Civ. P. 54(b).  The plain language of Rule 54(b) provides a federal court with "general discretionary authority to review and revise interlocutory rulings" before the entry of a final judgment.  *Pellicano v. Blue Cross Blue Shield Association*, 540 F. App'x 95, 97 n.4 (3d Cir. 2013) (unpublished); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991).  Because no final judgment has been entered in this case, the Court "possesses inherent power over interlocutory orders" and remains free to "reconsider them when it is consonant with justice to do so."  *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973).

**IV.    Discussion**

In their motion for partial reconsideration, the Defendants merely reassert arguments that the Court has already considered and rejected.  Furthermore, in a subsequent reply brief to their motion for reconsideration, the Defendants assert that their motion is now moot because the EEOC will not seek any type of compensatory, punitive, or other monetary damages resulting from the pre-offer screening of the successful job

3

applicants. (ECF No. 150-1). Nevertheless, to provide more clarity on its earlier decision, the Court will briefly reiterate why the Defendants are not entitled to summary judgment with respect to the claims brought on behalf of the successful applicants.

The relevant provision of Title I is codified at 42 U.S.C. § 12112(d)(2)(A) and provides that "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability" before extending an offer of employment. This "prophylactic" provision—which denies employers access to medical information about prospective employees while personnel decisions are being made—"aims to ensure that such information does not infect the employee-selection process." *Grane*, 2014 WL 896820, at *16. It is axiomatic that an employer cannot discriminate against an applicant "on the basis of disability" without *knowing* that he or she is "disabled."[1] *Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

Congress's primary objective in enacting § 12112(d)(2)(A) was to proscribe investigative techniques that would identify disabled job applicants and exclude them from further consideration for employment. *Griffin v. Steeltek*, 160 F.3d 591, 594 (10th Cir. 1998). The Defendants contend that Congress intended to protect only those individuals who are *excluded* from employment opportunities because of unlawfully discovered medical conditions, leaving no redress available to applicants who are hired after

---

[1] The statutory provision prohibiting pre-offer medical examinations and inquiries makes it more difficult for covered employers to violate Title I's anti-discrimination provision, which provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

4

undergoing illegal medical examinations or responding to illegal medical inquiries. (ECF No. 148 at 1–3). Contrary to the Defendants' interpretation, a violation of § 12112(d)(2)(A) occurs as soon as "an employer conducts an improper medical examination or asks an improper disability-related question, regardless of the results or response." *Green v. Joy Cone Co.*, 107 F. App'x 278, 280 (3d Cir. 2004) (unpublished). Although the protection of successful applicants was not the primary impetus for Congress's enactment of § 12112(d)(2)(A), "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). The Defendants do not cite to any language of the ADA to support their position that only unsuccessful applicants can assert claims under Title I's prophylactic provisions. (ECF No. 148 at 1–3). Similarly, the Defendants do not provide any relevant case authority for their position. (*Id.*).

A separate provision of § 12112(d) provides that "[a] covered entity may require a medical examination after an offer of employment has been made to a job applicant" if the "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B). Relevant to this provision, *Tice v. Centre Area Transportation Authority* involved a situation in which an employer had inadvertently violated Title I by "commingl[ing] confidential medical information with nonconfidential personnel information." 247 F.3d 506, 510 (3d Cir. 2001). The employer subsequently corrected the issue in response to a union-initiated grievance. *Id.* at 510. When presented with a claim brought by an aggrieved employee, the Third Circuit held

that the employee "[could] not maintain his suit against his employer on the ground of improper recordkeeping." *Id.* at 520. The Third Circuit explained that "there [wa]s no indication in either the text of the ADA or in its history that a technical violation of § 12112(d) was intended to give rise to damages liability." *Id.* Because the plaintiff could not identify a single individual who had improperly viewed his medical records, the plaintiff failed to establish "the existence of an injury-in-fact" that was "capable of remedy." *Id.* at 519.

The holding in *Tice* is best understood as an application of "the venerable maxim *de minimis non curat lex* ('the law cares not for trifles')," which is a "part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept." *Wisconsin Dept. of Revenue v. Wrigley*, 505 U.S. 214, 231 (1992). The Third Circuit held that an individual could not establish liability under the ADA simply by demonstrating that medical records had been mistakenly placed in the wrong file. *Tice*, 247 F.3d at 519–20. In this holding, the Third Circuit emphasized that it was not defining the "injury" that a plaintiff must suffer to maintain a cognizable claim under § 12112(d). *Id.* at 520 n.12. Because the Third Circuit declined to specify the type of injury that was needed to implicate one's rights under the ADA, this Court cannot accept the Defendants' assertion that *Tice* recognizes the loss of a job opportunity as the *only* injury that is capable of remedy under Title I.

While it may be true that certain applicants ultimately hired to work at the CCC cannot assert "injuries" that merit compensable damages, this Court cannot categorically conclude as a matter of law that *none* of those individuals suffered such "injuries" because

they were ultimately hired. The bright-line rule proposed by the Defendants cannot be reconciled with the language in *Tice* declining to specify the types of "injuries" that can trigger liability under the ADA. *See Tice*, 247 F.3d at 520 n.12. Moreover, the issue in *Tice* was whether "a technical violation of § 12112(d) [could] give rise to *damages* liability." *Id.* at 520. Here, Plaintiffs have established numerous statutory violations that serve as grounds for injunctive relief even in the absence of actual damages for which monetary relief could be provided. *Grane*, 2014 WL 896820, at *15–17.

Punitive damages may be awarded upon a showing that an employer covered under the ADA has "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). An award of compensatory damages need not accompany an award of punitive damages. *See, e.g.*, *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 159–60 (5th Cir. 2008); *Tisdale v. Federal Express Corp.*, 415 F.3d 516, 534–35 (6th Cir. 2005); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 359 (2d Cir. 2001); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1009–10 (7th Cir. 1998). In *Tice*, it was undisputed that the employer had inadvertently violated § 12112(d). 247 F.3d at 510. An employer must "discriminate in the face of a perceived risk that its actions will violate federal law" in order for punitive damages to be assessed. *Kolstad v. American Dental Association*, 527 U.S. 526, 536 (1999). Because *Tice* did not involve a situation in which a covered employer consciously violated § 12112(d), the decision in that case does not foreclose the possibility that punitive damages could be awarded in the absence of a tangible "injury." *Grane*, 2014 WL 896820, at *18–20.

7

In response to the Defendants' motion for partial reconsideration, the EEOC states that "it will not present claims for monetary relief or other victim-specific remedies concerning individuals who were actually hired." (ECF No. 149 at 1). At this stage, therefore, it appears that the claims brought on behalf of the successful applicants will serve only as grounds for injunctive relief. (*Id.* at 1). Consequently, the resolution of this case might not require any judicial determination as to which successful applicants suffered "injuries" sufficient to justify compensatory awards under *Tice*. In any event, the bright-line rule proposed by the Defendants is contrary to law and will be rejected.

**V.      Conclusion**

For the reasons stated above, the Defendants' motion for partial reconsideration (ECF No. 147) will be denied. The Court expresses no opinion on whether the EEOC will ultimately be successful in obtaining any monetary relief in this case. The Court simply concludes that the claims asserted on behalf of the successful applicants are not defeated solely because those applicants were ultimately hired to work at the CCC.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| ) | CIVIL ACTION NO. 3:10-250 |
| Plaintiff, ) ) | JUDGE KIM R. GIBSON |
| v. ) ) | |
| GRANE HEALTHCARE CO. and ) EBENSBURG CARE CENTER, LLC, d/b/a ) CAMBRIA CARE CENTER, ) ) | |
| Defendants. ) | |

### ORDER

And now, this 7th day of July 2014, upon consideration of the Defendants' motion for partial reconsideration (ECF No. 147), and upon further consideration of the relevant briefs accompanying the motion, and for the reasons explained in the foregoing memorandum opinion,

**IT IS HEREBY ORDERED** that the motion is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE